UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL ARCHAMBAULT,      )
        Petitioner           )
                        )      Civil No. _____
                        )
V.                      )                          **FILED**
                        )                      **WILLIAMSPORT**
                        )
WARDEN OF FCI ALLENWOOD, )                      AUG 0 4 2023
        Defendant        )
                         )      PER____NR_____
                                DEPUTY CLERK

## MOTION OF CIVIL RIGHTS VIOLATION

### OVERVIEW

Pro se petitioner, Paul Archambault, respectfully comes before the court to request that her access to the Bureau of Prison's Trulincs email system be fully restored due to a violation of the Fifth Amendment Equal Protection Claus, a constitutional right guaranted to all, as well as a violation of the Administrative Procedures Act.

### STATEMENT OF FACTS

Upon petitioner's arrival to FCI Allenwood in November 2016, she was denied access to email based on her instant offense, a sex offense. In May 2019, due to her extensive programming, clear conduct, respect, history, and need, petitioner was approved for limited use of email to communicate with her father. (See Exhibit A) This approval also provided petitioner with the opportunity to prove that she would use the email system properly. In January 2021, due to her proving that she could comply with the rules and regulations of Trulincs email, along with her programming, clear conduct, and behavior, petitioner was approved for greater use of email, this time expanded to family (See Ex. B). On April 1, 2022, SIS called petitioner to the LT's office to confront her regarding her email. Over two days a family member sent petitioner around 770 emails. Petitioner apologized for the incident, said she would find out what happened and make sure it never happened again. SIS stated 770 was way too many to receive. Petitioner later found out her daughter was bored and decided to copy and paste a large quantity of articles, more

*Page 1 of 14*

STATEMENT OF FACTS (cont.)

than she usually would. (See Ex. P). Her email address was blocked and the matter put to rest. In May 2022, petitioner was approved for full use of the Trulincs email system due to her continued behavior, programming, clear conduct and compliance with the rules and regulations of email use (See Ex. C & D). Petitioner then added more contacts, including a friend who would send a small amount of copied and pasted articles to her, along with his thoughts and comments. (See Ex. V)(V1 & V2)

On July 14, 2022, petitioner discovered that her access to the email system was denied. After being bounced around to various departments, (Ex F to J) petitioner's Unit Manager informed her that it was a decision made by SIS to take away her email access due to quantity issues and wrong information. After being unable to resolve the situation, petitioner submitted a BP-8 requesting the restoration of email access to which petitioner received a denial along with a copy of a memo from SIS showing they were requesting the Warden revoke petitioner's use of email confirming it was based on wrong information by SIS and weak reasonings. Petitioner then filed a BP-9 (Ex. S), BP-10 (Ex. T), and a BP-11 (Ex. U) all denying petitioner's request while providing unclear, unrelated, and occasionally wrong information while ignoring the key arguments and important points.

On June 7, 2023, petitioner was granted limited access to email with five contacts only and enacting a protocol that requires all contact edits and additions, including mailing addresses and phone numbers, to be approved by the "Administrator," which creates a restriction on all forms of communications since edited or added addresses cannot be printed for mailing labels, nor edited or added phone numbers cannot be called. On June 8, 2023, petitioner asked her Unit Manager when pending contacts would be approved, especially as a few were pending, and she was told that he would not be approving any edits or additions for any form of communication and to "be thankful for what you have." Petitioner then pointed out that she was not on phone or mail restriction and he restated (Ex.X) that he would not approve anything. After confirming that she is now essentially on phone and mail restriction, on top of wrongfully being denied full use of email after an unjust revocation, Petitioner filed with the court.

## DISCUSSION

The Bureau provides a messaging option, Trulincs email, for inmates to supplement postal mail correspondence to maintain family and community ties. (Ex. L). Policy dictates that "it is important that staff ensure inmates are only restricted from using Trulincs...when absolutely necessary to protect the safety, security, or orderly operation of the correctional facility, or the protection of the public or staff." (Ex E1). The policy goes on to describe how "An inmate's exclusion from participation must be based on his/her individual history of behavior that could jeopardize the legitamate penalogical interests listed above," and, "Inmates must not be excluded from participation based on general categorizations of previous conduct."

Within this same policy it is explained how sex offenders automatically have a temporary restriction on Trulincs access but also how, "These restrictions may be over-written when deemed appropriate by staff responsible for local sex offender management and approved by the Warden." (All quoting Public Statement 4500.12)(Ex E1, E2). The facts demonstrate that the petitioner has in fact followed procedure and been approved for the full use of her email, as allowed by policy. Below it will be demonstrated how petitioner's full email use was revoked unjustly based on wrong information and incorrect assumptions in violation of the Fifth Amendment Equal Protection Claus, as well as possibly the Administrative Procedures Act.

EXAMINING THE SIS MEMO:

Let us first look at the SIS memo of July 14, 2022, where SIS requested for petitioners email access to be revoked. (Ex. O). The main reason given is the quantity of emails petitioner was receiving but other points were brought up that were either false, misleading, or unrelated.

    i. SIS says that "the content of the emails are related to technology and video gaming. This is not a social contact email generated from the inmate's family." To be clear, these topics are not disallowed by policy and by no means even approaches any areas of inappropriateness. (Ex. R). Also, it does not matter that these emails were not sent by a family member as in May 2022 the petitioner was approved for full email

EXAMINING THE SIS MEMO (cont.)

access and the emails SIS cite are dated July 13, 2022, and July 14, 2022. Unlike in April 2022 when SIS told petitioner to dramatically reduce the volume of emails and their opinion that articles sent by my daughter was not in the spirit of family-only contacts, petitioner no longer had a restriction on who she could email with, a fact ignored by SIS. Also, policy does not require all Trulincs contacts to be social contacts as courts, attorneys, clergy, and medical offices (etc.) would not technically be classified as social contacts. A friend sending comments and articles easily would classify as one.

ii. SIS wrongly accuses petitioner of using an email subscription service. The evidence proves this to be false. A letter from the petitioner's daughter from June 2022 shows that she sent those emails in March/April 2022 until her email address, registered on a friend's domain, was blocked. ~~This is~~ (Ex. P1, P2, P3) This is further proven by another letter from a friend, Ben Breton, that explains that he is a real person who was sending the petitioner articles from Ars Technica, and not an email subscription service. (Ex. V). It's also noted that Mr. Breton was not added to petitioner's contacts (Under Ars Technica to accurately show the source the articles were copied from) until after she was approved for full use in May 2022. Attempted explanations to SIS were ignored.

iii. Petitioner notes that around 40-45 emails a day are much less than the one-time incident of nearly 800 in two days. Petitioner was receiving around 45 emails a day for two months with no problems until SIS wrote the memo. Discussions with her Unit Manager (a different person in May 2022 than now) indicated that around fifty a day would not be a problem and petitioner requested to be told if that changed. It must be pointed out that policy does not lay out a restriction on quantity of emails. No word of complaint was given over two months, with a consistant quantity received. This factor is weak when one looks at the hundreds of inmates who receive as much and even more

<u>EXAMINING THE SIS MEMO</u> (cont.)

emails as petitioner, many of them from actual email subscription services, text apps, and gambling sites with no consequences. This is further weakened when one other inmate, Justin May (#76415-066) was receiving the same amount of emails from Mr. Breton (and often more due to additional commentary/discussion) due to a shared interest in these topics, yet he faced absolutely no consequences at all, which is telling as the quantity issue is SIS's reasoning for the request. No guidelines for quantity were ever given to the petitioner, just to drastically reduce it from 770 a day, and the petitioner more than complied.

iv. Finally, SIS mentions petitioner's Public Safety Factor: Sex Offender. We must be clear that this has nothing to do with the matter at hand. Petitioner has never had any problems related to that over multiple years of using Trulincs email. Not with content, contacts, nor any violation of policy. Petitioner was approved for email use as allowed by policy. Over years she has proven herself and followed policy to be approved for email use for her exact situation and she has always demonstrated responsible and proper use over multiple years. The memo makes it clear that the issue has nothing to do with her being a sex offender which leads the petitioner to believe that the point was added at the end of the memo to bolster their weak reasoning for revoking petitioner's email access by pointing out prejudicial information that would distract the reader and muddy the waters. This belief is strengthened by the Warden not mentioning this factor in his BP-9 response, not even as a contributing factor.

<u>EXAMINING THE BP-9 RESPONSE:</u>

Moving on to the response to petitioner's BP-9 by the Warden (Ex. S), which appears to just copy and paste the Unit Manager's BP-8 response (Ex. N), the petitioner notices some key points.

i. The Warden cites the SIS memo, specifically "inappropriate useage," as the reason for the denial but nothing that the

<u>EXAMINING THE BP-9 RESPONSE</u>(cont.)

petitioner did constitutes inappropriate useage as evidenced by the facts, policy, and the lack of any incident reports. Even if there was inappropriate useage based on the volume of emails, the appropriate response would of been to block the email address that the messages were sent from, not revoke complete email access.(Ex. Q, R). This is further demonstrated by the two pieces of policy quoted by the Warden in his reply where, "it is important that staff ensure inmates are only restricted from using Trulincs, or individual Trulincs services when absolutely necessary...," and, "Electronic messages which would jeopardize the orderly operation of the institution...may be rejected or blocked. (Ex. S, E1)

ii. The Warden states that the petitioner has had email access since May 2022, which is incorrect. Petitioner has proven that she has had email use since May 2019 although perhaps the Warden is referencing when petitioner was approved for full use of email.

iii. Importantly, no mention is made by the Warden about the petitioner being a sex offender nor nothing about how that is the problem or even a part of the problem. This is because this factor had no bearing on why petitioner lost her email and was only mentioned by SIS as a distraction.

<u>EXAMINING THE BP-10 RESPONSE</u>

Next we look at the response to the petitioner's BP-10 (Ex. T).

i. Region quotes program statement 4500.12, specifically how those with Walsh Act assignments are reviewed on a case by case basis. It must be stressed that this is not the issue at hand. This is not why petitioner's email use was revoked. The SIS memo, and other evidence, makes it clear that the issue was with quantity of emails and nothing to do with petitioner being a sex offender. It seems to the petitioner that the sex offender smokescreen deployed by the SIS memo

EXAMINING THE BP-10 RESPONSE(cont.)

accomplished it's goal of obscuring the true issue and the flimsy basis for a permanent revocation of Trulincs email use by implying in bad faith that this factor was part of the issue. The Warden's response to the BP-9 bolsters the petitioner's argument that this was not and was never the issue nor cause of the revocation.

ii. Region stated that, "since the time of your appeal, you have been granted limited Trulincs access." This statement was simply not true when the Region claimed this on Jan. 27, 2023. Petitioner had no access to Trulincs since it was revoked from her in July 2022, until limited use was granted on June 7, 2023; nearly five months after this response from Region was written.

iii. Region also states that the petitioner is at a different facility than she is, writing that she is at LSCI Allenwood when she is actually at FCI Allenwood.

# EXAMINING THE BP-11 RESPONSE

Next we look at the response to petitioner's BP-11(Ex. U). In the Central Offices response, they quote Program Statement 4500.12 and in general terms state that a "review of the record reveals you meet the criteria for exclusion from the Trulincs Electronic Messaging System." No specifics were given which leads the petitioner to believe that they are leaning on the same argument given by Region, especially as they state no other reasoning. Central Office appeared to of focused on petitioner's Walsh Act assignment and used that to deny relief even though it has been well established that that is not the issue. Per policy, petitioner had her situation reviewed by the relevant staff members and was approved to use Trulincs email. The revocation of email use was not due to anything related to petitioner's sex offender status, only email quantity, and if her email use was never revoked due to the claim of too many emails, she would still have full email access today. Petitioner believes there was some confusion due to the uniqueness of her situation and SIS muddying the waters by mentioning petitioner's sex offender status unnecessarily, as a distraction. The petitioner also notes that although

EXAMINING THE BP-11 RESPONSE(cont.)

Central Office claims to "concur with the manner in which the Warden addresses your concerns," they never address the challenges to the issue of "inappropriate use" of the email, nor do they bring up how the Warden never mentions the defendant being a sex offender as being the issue. In fact, the unjustness of the revokation was never addressed at any point despite it being the true issue.

## EXAMINING LIMITED USE ACCESS AND PHONE & MAIL RESTRICTIONS

On June 7, 2023, petitioner was granted authorization to resume email communication but only on a limited basis, specifically she would be limited to five contacts. All email contacts, except five, were given "BOP-Inmate" blocks for no reason other than to limit petitioner's access to five. It is noteworthy that one of these blocked emails is her attorney, John Darling. Petitioner inquired on when full use would be restored and was told never despite being told in January 2023 that limited use would be granted for a few months to allow the petitioner to demostrate a reasonable quantity of emails (never specified beyond "less than three thousand) and then full use would be restored.

As part of this limited use, petitioner must now have all contacts be approved by the "Administrator" whom petitioner was told would be her Unit Manager. When asked about this, the Unit Manager informed petitioner that he would not be approving any contact edits or additions, no matter if they are mail or phone, personal or legal, despite limited use only being for emails. This now effectively places additional restrictions on the petitioner, specifically restricting postal mail and telephone use. This results from envelope labels, which are necessary to send out mail from any BOP facility, not being able to be printed out for new or edited addresses due to them never being approved. The same problem appears for the telephone as numbers cannot be added or changed without approval. No contact is exempt, be it family, friend, attorney, courthouse, business, or religious leader. Even if an existing contact moves or changes their phone number, I would be prevented from contacting them. I am prevented from even updated any of the five email addresses I am allowed to talk to now, essentially blocking that person.

## EXAMINING LIMITED USE ACCESS AND PHONE & MAIL RESTRICTIONS (cont)

This procedure of approval was enacted to prevent the petitioner from entering additional email address but this option requires that all forms of contact be approved. Normally all contacts, be it mail addresses, phone, or email, are automatically approved (or in the case of email, a request sent to the contact for their approval). Problems have already arose as petitioner edited three addresses and a phone number, including her attorney, and was told that they would never be approved and to be thankful for who petitioner could already speak to. This creates unjust hardships and restrictions on the petitioner and creates the realistic fear of being unable to communicate with family or friends that move, and even communicating with attorneys and courts freely.

Petitioner points out that the Allenwood Inmate Handbook states regarding:
   a. Mail Use: "You are permitted to correspond with the public, family members, and others without prior approval or a correspondence list." Also, "All outgoing inmate mail MUST have a Trulincs generated mailing label attached noting the recipient's address."
   b. Phone Use: "An Inmate is allowed to add and delete telephone numbers throughout the day," and, "Restricting inmate Trufone access shall only be done upon written notice from staff, as appropriate; e.g. the Associate Warden, Programs; the DHO or UDC to enforce specific disciplinary sanctions."

All told, Petitioner's access to her family, support system, and attorney has been severely limited unjustly and it all stems from the unjust revocation of her full email use. It must be noted that no notice was given of this protocol prior to it's enactment. Petitioner also points out that restoration of full Trulincs email use would eradicate this protocol and the extreme restrictions on all forms of communication that has resulted.

Petitioner also points out that there appears that her emails are currently experiencing a delay of a few business days before being

<u>EXAMINING LIMITED USE ACCESS AND PHONE & MAIL RESTRICTIONS (co.t)</u>

sent or received. The reason for this, when asked, has not been given.

<u>EQUAL PROTECTION CLAUS VIOLATION</u>

"The liberty protected by the Fifth Amendment Due Process Claus contains within it the prohibition against denying any person the equal protection of the law." <u>US v. Windsor</u>, 570 U.S. 744, 774, 133 S. Ct. 2675, 186 L.Ed. 2d 808 (2013). "A plaintiff may bring a "class of one" Equal Protection claim by alleging she has been intentionally treated differently from others who are similarly situated, and that there is no rational basis for the different treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed. 1060 (2000).

There are at least two specific issues that we must look at. Since petitioner was previously approved for use of Trulincs email, the core issue, despite being ignored throughout the administrative remedy process, is with the quantity of emails received. Once full use (up-graded from limited use) was granted in May 2022 after years of limited use, petitioner added a friend to her contacts, Ben Breton, who began to send her copied and pasted articles from Ars Technica. (Ex. V). A friend of the petitioner at FCI Allenwood, Justin May (#76415-066) also started to receive the same exact emails, copied and pasted right after they were sent to me. For about two months they both received the same quantity of emails from Mr. Breton but it was the petitioner and her alone, who was targeted for the loss of Trulincs email access. In fact, May often received more messages than petitioner and continues to receive those large quantities of emails, including from Mr. Breton still, with no consequences or problems. If the issue, as claimed by the SIS memo, was the quantity of emails then both the petitioner and May should of lost access to Trulincs email but instead there was clearly unequal treatment.

Another factor that has been brought up is the petitioner being a sex offender despite the facts demonstrating that it had nothing to do with her losing email access. If one wants to compare sex offenders/those with Walsh Act assignments then one can look at

EQUAL PROTECTION CLAUS VIOLATION

the inmate Eric Miller (# -066) who is a repeat child sex offender with computer use in the commission of his crime and he had full use of Trulincs email at both LSCI Allenwood and FCI Allenwood for years, with no problems and with no delays. Once again this demonstrates unequal treatment if the defendant claims the revokation was due to her being a sex offender. This argument holds no water as petitioner held the same designation through limited use and full use and it was not a problem. Petitioner also restates that she did not lose email use for anything related to her designation.

Regardless, the main issue at hand should be the quantity issue. The court should ignore the smoke screen that has been thrown forward as a distraction as that was never the cause given to revoke the petitioner's email use. The evidence shows that the petitioner was granted the use of email through the proper procedures, as allowed by BOP policy, for people with her designation. For either of these two reasons, we see unequal treatment towards the petitioner.

As far as quantity of emails goes, we can look at the countless amount of inmates who receive dozens and hundreds of emails a day, be it actual communications, texts through a messaging app, or sports betting lines and information yet none of these inmates are penalized for their quantity, yet again demonstrating unequal treatment.

Whichever explanation we look at, it is clear to the petitioner that her constitutional rights have been violated.

POSSIBLE ADMINISTRATIVE PROCEDURES ACT VIOLATION

"A reviewing court may set aside an agency action if the agency's action is found to be, "arbitrary, capricious, an abuse of discretion, or otherwise not in acaordance with law." 5 U.S.C. §706(z)(A); Douglas v. Independant Living Center of Southern California, Inc., 565 U.S. 606, 614, 132 S.Ct. 1204, 782 L.Ed. 2d 101 (2012)."An agency's action may be arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider

<u>POSSIBLE ADMINISTRATIVE PROCEDURES ACT VIOLATION</u>

an important aspect of the problem, offered an explaination for its' decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." <u>Christ the King Manor, Inc.</u>, 730 F.3d at 305 (quoting <u>State Farm</u>, 463 U.S. at 43).

    It appears that during the administrative grievance procedure the important aspect of the problem, the quantity of emails as the reason for the revoking of Trulincs email access, was not considered at all. Rather, the distraction of the sex offender designation mentioned in the SIS memo was latched onto, leading to the focus on that aspect when that was not part of the issue. This is most evident in the Region's and Central Office's response as the Warden in his BP-9 response never mentioned any issue with the petitioner being a sex offender as proper procedures were followed for her to be approved for email use and it was not a cause for the revokation. The agency ignored at every step of the way the issue of "inappropriate useage" claimed and ignored the explaination and evidence given. Instead, they relied on the arguement of petitioner being a sex offender even though that was never the issue.

    Through the defendant's actions and words, they not only completely failed to consider an important aspect of the problem -- the only aspect of the problem -- but also offered an explaination for it's decision that runs counter to the evidence. In fact, it appears they have ignored the evidence at every step of the way, let alone the entire situation that led to the petitioner losing her email access: the quantity problem claim. It is the petitioner's belief that this was ignored by all because no rule was violated and as such there are no legitamate grounds for the petitioner to of lost her full email access.

    As such, the petitioner believes that a clear violation of the Administrative Procedures Act was committed.

## SUMMARY

For the reasons stated within this motion, the pro se petitioner, Paul Archambault, respectfully requests that the court order the defendant to restore petitioner's full Trulincs email access, approve the pending contacts, and remove the "BOP Block-Inmate" for John Darling, Roxanne Baskerville, and Ars Technica email addresses.

## STATEMENT

I hereby declare that the facts alleged are true to the best of my knowledge and are supported by evidence, that those facts show a violation of law, and I am not filing this complaint to harass another person or for any other improper purpose.

Dated: July 31, 2023

x Paul Arm
Ms. Paul Archambault

Ms. Paul Archambault - 15723052
FCI Allenwood
PO Box 2000
White Deer, PA 17887

Paul Archambault - 15723-052
FCI Allenwood
PO Box 2000
White Deer, PA 17887

7020 1810 0001 4638 8962

RECEIVED
WILLIAMSPORT
AUG 04 2023

PER _____
DEPUTY CLERK

RETURN RECEIPT
REQUESTED

RECEIVED
WILLIAMSPORT

AUG 04 2023

PER _____ NR
DEPUTY CLERK

Retail

U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA 17887
AUG 02, 2023

17701

$0.00

RDC 99

R2305K138953-01

15723-052
Us District Court
Clerk of the Court
240 West Third Street
Suite 218
Williamsport, PA 17701
United States

FCI Allenwood White Deer, PA 17887

8-1-23
DATE

The Enclosed letter was processed through special
mailing procedures for forwarding to you. The letter has
been neither opened nor inspected. If the writer raises a
question or problem over which this facility has
jurisdiction, you may wish to return the material for further
information or clarification. If the writer encloses
correspondence for forwarding to another addressee,
please return the enclosure to the above address.

